**James N. GRAMENOS,**
**Plaintiff-Appellant,**

v.

**JEWEL COMPANIES, INC., et al.,**
**Defendants-Appellees.**

No. 85–2767.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1986.

Decided July 25, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 29, 1986.

James A. Stamos, Chicago, Ill., for plaintiff-appellant.

John T. Maher, Asst. Corp. Counsel, James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendants-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

Johnny Vaughn, a security guard at a Jewel supermarket, stopped James Gramenos, a customer, at 11:30 p.m. as he was leaving the store. Gramenos remonstrated with Vaughn and then ran through the store. Vaughn caught him and held him in an office until Joseph Schmit and Frank Cosgrove, officers of the Chicago police, arrived. Vaughn accused Gramenos of shoplifting, displaying a jar of baby food, a box of gelatin, and two tubes of toothpaste, which Vaughn said he had seen Gramenos put in his pocket while shopping and then scatter during his dash through the aisles.

[*] Hon. William J. Campbell, of the Northern District of Illinois, sitting by designation.

Gramenos denied stealing the items, stating that he first had taken Vaughn for an assailant and then, on learning that Vaughn was a guard, had gone in search of the store's manager to complain about Vaughn's behavior. Vaughn signed a complaint. The police arrested Gramenos, who protested: "You can't do this. I want to talk to witnesses and get my side of the story. I am a lawyer. I am a public defender." (One patron in the store recalls that Gramenos kept saying: "You can't arrest me, I'm a lawyer.") The police let him go at 4:15 a.m. after he posted a $100 bond.

Gramenos was prosecuted and acquitted. Vaughn was the only witness for the state, and at the end of Vaughn's testimony the judge stated: "I think on all things I think there is a misunderstanding. I have a doubt. Finding of not guilty." Gramenos then turned the tables, filing this suit under 42 U.S.C. § 1983 against the supermarket, Vaughn, the two arresting officers, and Sgt. Frank Heatley, the desk officer at the police station at which Gramenos was held. After discovery had been completed, the defendants moved for summary judgment. A magistrate recommended that the district judge grant the motion; the judge did so, adopting the magistrate's short opinion.

## I

■ Illinois law requires that a criminal complaint be sworn. Ill.Rev.Stat. 38 § 111–3(b). Vaughn's complaint was not properly sworn. Vaughn signed the complaint, but not in the presence of the attesting officer, Sgt. Heatley. Gramenos believes that on this account Vaughn and the police must pay him damages. We will assume that the procedure of attesting the signature out of the presence of the witness violates state law. It does not matter. In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same. E.g., *Carson v. Block*, 790 F.2d 562, 565 (7th Cir.1986) (collecting cases); *McKinney v. George*, 726 F.2d 1183, 1188–89 (7th Cir. 1984) (holding that a warrantless arrest on probable cause does not violate the fourth amendment even if state law required the police to have prior authorization). No principle of federal law makes a properly attested complaint necessary to an arrest or a criminal prosecution. Police often arrest suspects on the basis of oral reports from witnesses, and the state may prosecute against the wishes of all witnesses.

Gramenos states that: "The failure to file a valid complaint, in of [sic] itself, establishes a violation of § 1983 [sic]. *Duriso v. K–Mart*, 559 F.2d 1274 (5th Cir. 1977); *Smith v. Brookshire Bros.*, 519 F.2d 93 (5th Cir.1975)." Neither case says anything like this. The complaint in *Smith* was irregular, but the violation of the Constitution was that the police arrested a suspect without either a valid complaint (the witness signed a blank piece of paper) or any knowledge of the facts. As the court put it, the police "depended on the conclusory assessment of the store officers. These store managers, in turn, did not have probable cause for believing that McClure was a shoplifter and that Smith was an accomplice." 519 F.2d at 94. In *Duriso* the complaint was *properly* signed, and it was this complaint that furnished the basis for concluding that the complaining witness knowingly made a false charge under color of state law. 559 F.2d at 1277–78. In both *Smith* and *Duriso* the constitutional problem was the lack of probable cause to make an arrest. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir.1985), on which Gramenos relies for assistance on every other issue in the case, states: "this court once again notes that an alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution." Gramenos does not even try to explain how his position can be reconciled with *Moore*.

Gramenos insists, however, that the Supreme Court has held that violations of state law also violate the Constitution.

The brief cites *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), and *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The question in *Harlow* was one of immunity, and the Court said that officials are immune from liability in damages for the violation "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. A rule that a clear violation of statute will remove an immunity—because the statute gives notice of the conduct required, so that the defendant cannot say that the norm took him by surprise—is a far cry from saying that the violation of a statute is itself a violation of the Constitution. *Davis* then holds that violations of statutes generally do *not* dissipate immunity, stating: "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." 468 U.S. at 194, 104 S.Ct. at 3020. A footnote continues: "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon." 468 U.S. at 194 n. 12, 104 S.Ct. at 3020, n. 12. The statute involved in this case is not a statute of the United States, the violation of which would be actionable under § 1983.

## II

Gramenos accuses Jewel, Vaughn, and the police of conspiring to deprive him of his constitutional rights. There are two problems. One, which applies to all defendants, is that the claim assumes a deprivation of rights—an arrest that is unreasonable within the meaning of the fourth amendment, now applicable to the states through the fourteenth. If the arrest was constitutionally unreasonable, then the police are liable under § 1983 without regard to the "conspiracy", and if not, not. We defer to Part IV the discussion whether the arrest was supported by probable cause.

The other problem, which applies to Jewel and Vaughn, is that the Constitution applies only to governmental actors. Gramenos does not contend that one who accuses someone else of a crime is exercising the powers of the state. A private party comes within § 1983 only when "he is a willful participant in joint action with the State or its agents.... Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the [state]." *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Although private parties call on the aid of state law "without the grounds to do so", when the private decision may "in no way be attributed to a state rule or a state decision" (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982)), the private parties are not state actors. There must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

*Adickes*, the last in a line of cases in which restaurateurs and others used the trespass or vagrancy laws to enforce racial segregation long after it became clear that the state may not discriminate on account of race, has become the basis for a rule that shopkeepers are engaged in "state action" when they strike a deal with the police under which the police simply carry out the shopkeepers' directions. If the police promise to arrest anyone the shopkeeper designates, then the shopkeeper is exercising the state's function and is treated as if he were the state. This approach is the basis for the finding of state action in *Duriso* and *Smith* and, among many other cases, *Moore v. Marketplace Restaurant*, 754 F.2d at 1352–53; *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir.1984), *vacated in part*, —— U.S. ——, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); and *Davis v. Carson Pirie Scott & Co.*, 530 F.Supp. 799 (N.D.Ill.1982). But if the shopkeeper is operating independently, his conduct is

judged under the state tort law (false arrest, malicious prosecution, slander, and the like) rather than the fourth amendment. Cf. *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The parties agree on these principles but disagree about their application to this case.

Gramenos took the deposition of every significant actor in the case. Each denied that there was any arrangement, plan, or scheme under which the police would arrest anyone Jewel wanted arrested. Gramenos did not present any evidence to pierce these denials—such as evidence that the police have arrested everyone Jewel wanted arrested in the past. The police stated that they had not arrested anyone at Vaughn's request before, so it is not possible to conclude that Vaughn had struck his own bargain with them. A party may not cry "conspiracy" and throw himself on the jury's mercy. Even if the jury should disbelieve all the denials, this would leave Gramenos with no evidence. There must be a genuine dispute about a material fact. *Anderson v. Liberty Lobby, Inc.*, — U.S. —, — – —, 106 S.Ct. 2505, 2511–16, 91 L.Ed.2d 202 (1986). A jury in this case could come out only one way.

■ There are three bits of evidence on which Gramenos seizes. First, Jewel kept printed complaint forms in its stores. Its employees filled these out when they caught shoplifters. Second, the "Chief of Loss Prevention" of Jewel stated that Jewel left its guards with full discretion to decide when to let a suspect go and when to "lock him up." Third, officer Cosgrove stated that "if the Jewel wanted the individual arrested, we would arrest him." The supermarket's use of preprinted forms does not show that the police and Jewel entered into a plan of any kind. The store keeps the forms for its own convenience. Shoplifting is common; it makes sense for a store to have a stock of forms whether or not the store has an agreement with the police. The two statements, read in context, do not show that Jewel and the police

had a standing arrangement; the chief of loss prevention, like officer Cosgrove and everyone else, denied it. The point of each statement was that the guard in the store had discretion to decide whether to let the suspect go or press charges. If the guard thought the evidence weak, neither Jewel's management nor the police would question a decision to drop things then and there. If the guard thought the evidence strong, then the police had to decide what to do. A party cannot resist summary judgment by pointing to snippets of depositions when the point of *every* witness's statement was that there was no agreement, and the police exercised independent judgment. They may have exercised poor judgment (a subject to which we return), but they exercised judgment. Plausible inferences must be resolved in favor of the party opposing summary judgment, but the inferences Gramenos presses on us are not plausible. A verdict by the jury for Gramenos would have to be set aside. The evidence of conspiracy here is weaker than the evidence in *Moore*, 754 F.2d at 1352–53, a case in which the defendants received summary judgment.

### III

■ The police held Gramenos between 11:55 p.m., when they left the store, and 4:15 a.m., when they allowed him to post $100 and go. They did not take him before a magistrate. He seeks compensation for what he says is excessive detention. The magistrate did not discuss this claim, and the police respond to it only by pointing out that they need to do a lot of things after an arrest—take fingerprints and mug shots, check for outstanding warrants, fill out countless forms. One difficulty is that none of the evidence in this case quantifies the amount of time it would take reasonably diligent officers to complete these tasks. Another is that there is some evidence that the police held Gramenos out of spite—or perhaps to impose the real punishment for shoplifting, see Malcolm M. Feeley, *The Process is the Punishment* (1979)—rather than out of a need to

complete essential tasks. When Gramenos arrived at the stationhouse he asked to be released on bond. He states that officer Schmit replied: "Counsel, we are going to keep you here for four hours."

"[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh,* 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975). When the "administrative steps" have been completed, the police must take the suspect before a magistrate to establish probable cause, or they must let him go. The Court has never said how long the "brief period" may be. The American Law Institute thinks that two hours are enough. *Model Code of Pre-Arraignment Procedure* § 130.2(1) (1975). We held in *Moore,* 754 F.2d at 1350–52, that four hours requires explanation. This case is in essentially the same posture as *Moore:* an unexplained four hours of detention in the dead of night. It must be remanded for further proceedings.

It is premature to say how long is too long under the fourth amendment. On remand the police should explain what must be done after an arrest for shoplifting and why reasonably diligent officers need more than four hours to do it. The court also should determine whether four hours is an acceptable period for a non-violent misdemeanor. If the police choose to perform time-consuming tasks after an arrest, perhaps they must do so on their own time rather than the suspect's, issuing a citation rather than keeping the suspect locked up in the interim.

## IV

Whether summary judgment is proper on the question whether the police were entitled to arrest Gramenos is the most difficult issue in the case. When Schmit and Cosgrove arrived at the store, Vaughn told them that he had seen Gramenos put items in his pocket, pass through the checkout line (paying for other items), and try to leave the store. Vaughn intercepted Gramenos on his way out, and, according to Vaughn, Gramenos then took off through the aisles, emptying his pockets. Vaughn displayed the items to the officers, saying that he and a stockboy had collected them. Gramenos conceded touring the aisles at a good clip (he says it was a fast walk) but denied removing things from his pockets or having anything that needed to be removed. Gramenos states that at this point the police took him into custody, believing Vaughn's story over his. This is not probable cause, Gramenos asserts, because the police bypassed an opportunity to interview the stockboy and shoppers to determine who was telling the truth.

In depositions the police stated that they had interviewed the stockboy and two customers, who corroborated Vaughn's tale. Two shoppers also gave depositions, each stating that he had talked with the police and had seen Gramenos do suspicious things. The magistrate stated that "it is uncontradicted that the officers did independently interview and investigate the facts" and concluded, on this ground, that they had probable cause. This is not correct; Gramenos contradicts the officers' claim that they interviewed other witnesses. Although Gramenos was under restraint and therefore could not observe everything the police did, he offered some reasons that might lead a jury to conclude that the other shoppers had mistaken his arrest for that of some other person. The arrest report the officers filled out at the time does not mention witnesses other than Vaughn. Affidavits filed by the officers also state that the arrest was made on Vaughn's complaint and omit mention of other witnesses. And each of the two shoppers' descriptions of the arrest differs from what Gramenos and Vaughn agree occurred. One shopper, for example, said that he saw a white security guard escort Gramenos to an office and remove merchandise from his pocket; later the police took Gramenos away on a paddy wagon. Vaughn is black; no one else thinks that Gramenos had merchandise in his pocket

when he reached the office; the merchandise this shopper recalls is not the kind Gramenos is accused of stealing; and the police left in a cruiser, not a paddy wagon. The second shopper stated that at the time she saw Gramenos in the Jewel store she was pregnant with her first child; the date on which she gave birth precludes her pregnancy at the time Gramenos was arrested. Now a jury might believe that this shopper was mistaken about her pregnancy rather than her observation of the incident, as a jury might believe that the first shopper saw the incident but had trouble remembering the details. Eyewitness descriptions are notoriously full of inaccuracies. Elizabeth F. Loftus, *Eyewitness Testimony: Psychological Research and Legal Thought*, 3 *Crime and Justice: An Annual Review of Research* 105 (1981). These are not the sort of issues that may be resolved on summary judgment, however.

We therefore take only the facts on which there is no genuine dispute. Vaughn, a store guard, told the police that he saw Gramenos put items in his pocket and try to leave the store with them, and that Gramenos ran wildly through the aisles scattering food after being confronted. Vaughn filled out a criminal complaint and signed it in the presence of the two officers. Gramenos denied everything (except walking quickly through the aisles). The police interviewed no one else and took Gramenos away. Did they have probable cause?

Two of our recent cases hold that the existence of probable cause is a question for the jury in a damages suit "if there is room for a difference of opinion." *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc); *Moore*, 754 F.2d at 1344–47. Probable cause can be a matter of degree, varying with both the need for prompt action and the quality of the information at hand. *Illinois v. Gates*, 462 U.S. 213, 235, 238–39, 103 S.Ct. 2317, 2330, 2332, 76 L.Ed.2d 527 (1983); *Llaguno*, 763 F.2d at 1564–66. There are many formulae for "probable cause" or "reasonable suspicion"

but all speak of the exercise of judgment, of decisions "turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329. This certainly sounds like the territory of the jury, leaving that body to determine probable cause and calling on the officer to pay damages unless he makes out a defense of immunity, perhaps under the rubric "probable cause to believe there was probable cause." See *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

Yet we hesitate to conclude that 195 years after the fourth amendment was added to the Constitution there must be a jury trial every time the police arrest a person accused by a store guard who says he saw the person shoplifting, a trial in which the jury will decide whether the police used the right investigative techniques. Each jury will have its own view of appropriate investigation, and the burden of trials will be a substantial tax on police for the privilege of doing their already difficult jobs. *Llaguno* and *Moore* were unusual cases, and they do not establish that every acquitted defendant is entitled to a trial on whether he should have been arrested. See *Williams v. Kobel, supra*. Both *Llaguno* and *Moore* involved warrantless entries into dwellings looking for suspects. The search in *Moore* was late at night, and the police lacked good information that a crime had been committed. There had been a dispute about the size of a bill in a restaurant, and whether this was a theft of service or a contract dispute was hard to tell. A jury might conclude that a nighttime arrest for an incident that may not have been a crime was unreasonable—and "reasonableness" is the central command of the fourth amendment. More generally, *Llaguno* and *Moore* merge the concepts of probable cause and reasonableness. This is sometimes inevitable, given the flexible quality of probable cause (which is less than a rule of more-likely-than-not, but how much less depends on the circumstances). See Albert W. Alschuler, *Bright Line Fever and the*

*Fourth Amendment,* 45 U.Pitt.L.Rev. 227, 236–41, 243–56 (1984). The question is not always open-ended, however, and it may be possible to have an understandable definition of probable cause even though "reasonableness" remains as a separate issue. We think a separation is useful here, when the question concerns the sufficiency of the evidence to make an arrest in a public place. See *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed 2d 598 (1976).

Vaughn was an eyewitness. The facts he related to the police (if he told the truth) establish a crime. Vaughn said that Gramenos had passed the checkout counter and was about to leave the store. Gramenos's identity was not in dispute. In Illinois the report of an eyewitness to a crime is sufficient to authorize an arrest. E.g., *People v. Foss,* 18 Ill.App.3d 496, 499–500, 309 N.E.2d 677 (2d Dist.1974). The Supreme Court has not spoken on the question, but the formulae for probable cause, such as "a probability or substantial chance of criminal activity, not an actual showing of such activity", *Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. at 2335, quoted in *New York v. P.J. Video, Inc.,* — U.S. —, 106 S.Ct. 1610, 1616, 89 L.Ed.2d 871 (1986), or "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been committed", *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), do not suggest that an officer risks his career and his fortune by believing an apparently sober eyewitness to a crime. A "prudent" officer may balk if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago, or if the person leveling the accusation is babbling or inconsistent. When an officer has "received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth", *Daniels v. United States,* 393 F.2d 359, 361 (D.C. Cir.1968), he has probable cause. Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters. For example, *McKinney v. George,* 726 F.2d 1183 (7th Cir.1984), held that a witness's complaint established probable cause as a matter of law, making a trial unnecessary. As the Eighth Circuit remarked in finding probable cause despite an officer's failure to conduct an investigation (even to look at the bill said to be counterfeit): "There is no constitutional or statutory requirement that before an arrest can be made the police must conduct a trial." *Morrison v. United States,* 491 F.2d 344, 346 (8th Cir.1974). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). See also 1 Wayne R. LaFave, *Search and Seizure* § 3.2 (1978).

Police have reasonable grounds to believe a guard at a supermarket. We need not say that police always are entitled to act on the complaint of an eyewitness; a guard is not just any eyewitness. The chance that the complainant is pursuing a grudge, a risk in believing an unknown witness, is small in an institutional setting. The guard who pursues a private agenda may be fired and disgraced; there are automatic penalties that the police are entitled to consider. Cf. *Model Code of Pre-Arraignment Procedure* at 297–303. The store will insist that guards err on the side of caution. It does not want to embarrass and anger an honest customer—not only because this is bad for business but also because a false charge of crime may lead to costly tort litigation under state law. Jewel Companies is not judgment-proof; its self-interest protects shoppers from unsubstantiated charges, and the police are entitled to consider this, too. The question is whether they have reasonable grounds on which to act, not whether it was reasonable to conduct a further investigation. Cf. *United States v. Edwards,* 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974).

Some parallel rules suggest that one reliable eyewitness is enough. Even before *Gates,* a single tipster could supply probable cause to issue a search or arrest warrant, if the police had reason to think that the informant had firsthand knowledge and was reliable. See *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); both overruled (in favor of a lower standard of probable cause) by *Gates.* The opinions in *Aguilar* and *Spinelli* take it as a point of departure that the report of one identified, reliable eyewitness creates probable cause. The Court has never suggested that the police, with such information in hand, must conduct a further investigation or put contradictory evidence into the affidavit. Cf. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), holding that if an affidavit is sufficient on its face the defendant may not try to undercut the finding of probable cause by introducing other facts that the police left out, indeed that he may not even controvert the facts in the affidavit, unless he first shows that the author of the affidavit knew them to be untrue and that without these facts the affidavit would not establish probable cause.

Just as a single eyewitness's statement—without further investigation or a narration of contrary evidence—can support a warrant, so a single eyewitness's statement can support an indictment and a conviction. If the state had chosen to indict Gramenos, it could have done so on the basis of Vaughn's testimony without offering Gramenos any opportunity to rebut the testimony and without telling the grand jury anything more. And if the judge at trial had chosen to believe Vaughn over Gramenos, that would have been sufficient to support a conviction "beyond a reasonable doubt." It would be passing strange if the evidence sufficient to establish guilt at trial were not enough to make an arrest. The trial gives extra safeguards, such as the right to cross-examine Vaughn and present evidence in reply, that enable the trier of fact to assess Vaughn's story more fully

than the officers did on the scene, but the stakes at trial are also greater. The stakes in an arrest, in addition to the sheer embarrassment of it all, are whether the police may hold the suspect for the "brief period" (*Gerstein,* 420 U.S. at 114, 95 S.Ct. at 863) necessary to handle housekeeping and get the suspect before a magistrate, and the level of inquiry is correspondingly lower. Cf. *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (a detention of 20 minutes, perhaps more, may be justified on suspicion falling short of probable cause).

The police may discover, to their dismay, that when they do not conduct an investigation they cannot get a conviction. The uncorroborated testimony of Vaughn did not carry the day at trial. If the two shoppers and the stockboy had testified, things might have come out differently. But the fourth amendment does not define as probable cause whatever good police practice requires, or whatever proves necessary to prevail at trial. A rule under which a single eyewitness's report can be probable cause does not induce the police to make careless arrests; their own concern for their reputations as producers of good cases will lead them to do more as a rule— as the officers say they did more in this case.

One more consideration supports the conclusion that the report of an eyewitness who has good reasons to tell the truth furnishes probable cause: that "probable cause" is not always sufficient to make an arrest. "Probable cause" appears in the fourth amendment only as a requirement for a warrant. The general rule, in the first clause of the amendment, is that "[t]he right of the people, to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated". Probable cause, a soundly-based belief that the suspect may have committed a crime, is only one component of the "reasonableness" of arresting and detaining a person. When the arrest for a felony occurs in a public place in the daytime, probable cause is the only question. *United States v. Watson,*

*supra;* see also *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 240, 49 L.Ed.2d 300 (1976). Even then the police may hold the suspect only for a "brief period" (*Gerstein,* 420 U.S. at 114, 95 S.Ct. at 863) pending presentation of the case to a judicial officer. When the arrest requires the use of deadly force, probable cause is not sufficient. *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). When the arrest takes place in a home, the police officer's assessment of probable cause ordinarily is not sufficient; the officer must get a warrant unless the circumstances are exigent. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573 (1980). When the arrest (or any other seizure) takes place in a private place at night, the police ordinarily must meet an elevated standard (be "positive") and perhaps establish a special need for haste or stealth. Fed.R.Crim.P. 41(c)(1); *Gooding v. United States,* 416 U.S. 430, 455–58, 94 S.Ct. 1780, 1793–94, 40 L.Ed.2d 250 (1974); *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514 (1958).

The common law contains one more limit, a constraint of special pertinence here: an officer may make a custodial arrest for a misdemeanor only if the crime was committed in his presence. See Wayne R. LaFave, *Arrest: The Decision to Take a Suspect into Custody* 17–30 (1965), for a description of the common law and its limits. The rule reflects a widely-held belief that misdemeanors should be prosecuted by citation unless the officer has seen the crime committed, which greatly reduces the chance of mistaken arrest. Those stopped for misdemeanors such as traffic offenses usually are cited and released on the spot after posting bond. Most reports of misdemeanors will not produce a sentence of custody (as opposed to a fine or probation), so a custodial arrest itself becomes a substantial part of the penalty. The Supreme Court has bypassed opportunities to decide whether the common law rule is part of the fourth amendment, see *Gustafson v. Florida,* 414 U.S. 260, 266–67, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973) (Stewart, J., concurring). In deciding other questions under the fourth amendment, however, the Court has found the historical practice a useful guide. E.g., *Edwards,* 415 U.S. at 804 n. 6, 94 S.Ct. at 1238 n. 6; *Watson,* 423 U.S. at 418–22, 96 S.Ct. at 825–27; *United States v. Ramsey,* 431 U.S. 606, 616–19, 97 S.Ct. 1972, 1978–80, 52 L.Ed.2d 617 (1977). Searches must be "reasonable", but "reasonable" may be a term of legal art defined by history and not an invitation to modern invention; when the term has a developed meaning, it controls the course of decision.

Illinois is among the states that have altered the common law rule. It allows a full custodial arrest for any crime on probable cause. Ill.Rev.Stat. ch. 38 § 107–2(1)(c). See also *Model Code of Pre-Arraignment Procedure* 692–95 (collecting statutes in other jurisdictions). The A.L.I. recommends a statute allowing a custodial arrest for a misdemeanor if the officer has reasonable cause to believe that the suspect will not appear in response to a summons or will injure himself or others. *Model Code* § 120.1(1)(b) and commentary at 289–90. Given the statute in Illinois, and the principles of official immunity in *Pierson v. Ray, supra,* and their enlargement in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the officers' decision to arrest Gramenos cannot be the basis for an award of damages, if there was probable cause. Cf. *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). We are not authorized to decide in this case whether the statute abrogating the common law rule—without putting equivalent guarantees of reasonable conduct in its place—comports with the fourth amendment. But this discussion is not a detour. It is important to understand that "probable cause" is not always the same thing as "reasonable" conduct by the police, and that one reason why it is appropriate to treat the statement of an apparently reputable eyewitness as probable cause is that other rules potentially affect the propriety of making an arrest on this information.

Gramenos does not challenge the "reasonableness" of his arrest if there is probable cause, and he does not seek relief against the operation of the Illinois statute

authorizing misdemeanor arrests on probable cause. It is not appropriate to read every element of constitutional "reasonableness" back into the term "probable cause". These terms serve distinct functions, which are lost by a homogenization of the legal vocabulary. We conclude that the police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages. Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices. There is a gap, often a wide one, between the wise and the compulsory. To collapse those two concepts is to put the judicial branch in general superintendence of the daily operation of government, which neither the fourth amendment nor any other part of the Constitution contemplates.

The judgment is affirmed, except that the portion granting summary judgment on the claim of excessive detention is vacated, and the case is remanded for further proceedings consistent with Part III of this opinion. Jewel and Vaughn shall recover their costs. Gramenos and the police officers shall bear their own costs.