James BOYD, Plaintiff,

v.

Police Officer K. ANGARONE, Star No. 16951 and Police Officer A. Parisi, Star No. 16540; Police Beat 2332, in both their individual capacity and as agents for the City of Chicago Police Department, Defendants.

No. 87 C 8994.

United States District Court, N.D. Illinois, E.D.

Jan. 9, 1990.

Richard A. Rheinstrom, Chicago, Ill., for plaintiff.

Carolyn A. Bird, Asst. Corp. Counsel, City of Chicago, Law Dept., and Kelly R. Welsh, Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff James Boyd brought this suit under 42 U.S.C. § 1983, alleging violation of his constitutional rights by Chicago police officers Kenneth Angarone and Amie Parisi. Mr. Boyd charges that defendants arrested him without a warrant, contrary to the dictates of the Fourth and Fourteenth Amendments; that they used excessive force in arresting him; and that they exceeded their authority under Illinois law by arresting him outside city limits.

Officers Angarone and Parisi filed a motion for summary judgment. To plaintiff's claim of warrantless arrest, they respond that such arrests are lawful if executed in a public place by police officers who have probable cause to believe that the arrestee has committed a felony. Plaintiff's charge of excessive force also fails, argue defendants, since their behavior was clearly not so outrageous as to "shock the conscience." Finally, defendants note that Illinois law permits them to make an arrest in adjoining municipalities, and that, in any event, a violation of state law does not create Section 1983 liability.

■■■ Defendants are correct on every point. Warrantless public arrests do satisfy the Constitution if they are supported by probable cause, which, as illustrated below, the officers clearly had. Defendants' use of force must indeed have been "shocking to the conscience" for plaintiff to recover, which it plainly was not. And violations of state law do not give rise to liability under 42 U.S.C. § 1983.

For these reasons, Magistrate Elaine E. Bucklo, to whom the Court referred this case for a Report and Recommendation, advised that defendants' motion for summary judgment be granted. The Magistrate found no genuine issues of material fact to exist after drawing all reasonable inferences in the light most favorable to plaintiff. *See Bartman v. Allis Chalmers*, 799 F.2d 311, 312–313 (7th Cir.1986). Neither party exercised its right under Federal Rule of Civil Procedure 72 to object to the Magistrate's Report and Recommendation.

The Court agrees with Magistrate Bucklo that summary judgment should be entered in favor of defendants. Because the Magistrate's Report contains an excellent analysis of this case, the court sees no reason to add more, and adopts the Report and Recommendation in full. The Report follows in an appendix to this opinion.

---

**1.** The facts are, for the most part, not in dispute. *See* Plaintiff's Memorandum of Law at 1 (the plaintiff agrees with all facts as stated in defendants' brief). Moreover, because Mr. Boyd did not file a response to the defendants' Local Rule

Defendants' motion for summary judgment is hereby granted.

## APPENDIX

In The United States District Court For The Northern District of Illinois Eastern Division

James Boyd,

Plaintiff,

v.

Police Officer K. Angarone, Star No. 16951 and Police Officer A. Parisi, Star No. 16540; Police Beat 2332, in both their individual capacity and as agents for the City of Chicago Police Department,

Defendants.

Case No. 87 C 8994

REPORT AND RECOMMENDATION

Nov. 1, 1989

James Boyd has filed a one-count complaint based on 42 U.S.C. § 1983 against Chicago police officers Kenneth Angarone and Amie Parisi, alleging that the defendants violated his constitutional rights by arresting him without probable cause, and by using excessive force during the arrest. Jurisdiction and venue are proper, and the case has been referred to me for a report and recommendation on the defendants' motion for summary judgment. I recommend that the defendants' motion be granted.

*Facts* [1]

On September 14, 1987, Mr. Boyd was a Chicago Transit Authority ("CTA") bus driver who worked out of the CTA's North Park garage. Defendants' Rule 12(e) Statement ¶ 4. On that date, at approximately 9:15 a.m., Officers Parisi and Angarone were directed to Cuneo Hospital in Chicago to investigate the rape of a 12–year-old girl. Rule 12(e) Statement ¶ 6. At

12(e) statement of material facts as to which there is no genuine issue, the defendants' material facts are deemed admitted. Local Rule 12(f).

the hospital, the officers learned from Sergeant Dennis Ross and Officer Timothy Fallon that the rape victim had identified her attacker as "Jimmy Boyd," her mother's boyfriend. According to the victim's mother, Mr. Boyd was a CTA bus driver who worked out of the CTA's North Park garage. The victim's mother also gave the officers Jimmy Boyd's badge number. Rule 12(e) Statement ¶ 7. Officer Fallon told Officers Angarone and Parisi that he had called the CTA's North Park garage and had been told by CTA Supervisor Heron that "Jimmy Boyd," Badge No. 7982, was working that morning in Evanston, and would be driving by the intersection of Sherman and Davis Streets at approximately 10 a.m. Rule 12(e) Statement ¶ 8. Sergeant Ross then told Ms. Parisi and Mr. Angarone to go to the Sherman and Davis intersection in Evanston. There, they were met by CTA Supervisors John Jarecki and Allen Lichter, and Evanston Police Officer Robert Whitehead. Rule 12(e) Statement ¶ 9.

At approximately 10 a.m., Mr. Boyd arrived at the Sherman and Davis intersection, where CTA Supervisor Lichter stopped the bus Mr. Boyd was driving before it got to the curb. Boyd Dep. at 101. According to Mr. Boyd, Mr. Lichter asked him, "Is your name Boyd?" When Mr. Boyd answered affirmatively, Mr. Lichter told him to pull the bus over and to step off the bus. Boyd Dep. at 101.

When Mr. Boyd pulled his bus over to the curb and stepped off, Officer Angarone grabbed him, pushed him up against the bus, and told him that he was under arrest for sexual assault. Boyd Dep. at 101. Officer Parisi read him his rights, but neither she nor Officer Angarone asked his badge number. Then, Mr. Boyd was handcuffed and pushed into the back seat of a marked police car, where he hit his head on the door or the roof of the car. Boyd Dep. at 103. Officers Parisi and Angarone then drove Mr. Boyd to the 23rd District Police Station at 3600 North Halsted in Chicago. Mr. Boyd testified that during the 20 to 25 minute ride from Evanston to Chicago,

the handcuffs "were really into my skin." Boyd Dep. at 64. He stated that he asked the police officers to release the pressure of the handcuffs, but the officer refused, telling him to wait until they got to the station. Boyd Dep. at 64.

At the police station, Mr. Angarone loosened one handcuff and removed the other cuff, attaching it to a ring on the wall. Rule 12(e) Statement ¶ 14. CTA Supervisor Jarecki testified that Mr. Boyd told him at the police station that the police had arrested the wrong man, and told him that there was another Jimmy Boyd. In addition, the badge number the police had been given by the victim's mother did not coincide with Mr. Boyd's badge number. Jarecki Dep. p. 22. Mr. Jarecki then called the CTA garage, whereupon the superintendent at the CTA garage told Mr. Jarecki that he had previously identified the wrong Mr. Boyd. He also told Mr. Jarecki where the second Mr. Boyd was working, Jarecki Dep. p. 22, and the police released the plaintiff.

That evening or the next day, Mr. Boyd visited Swedish Covenant Hospital, and sought treatment for injuries to his wrist, his hands, and his shoulder. Boyd Dep. at 63. In addition, Mr. Boyd complained of headaches. Boyd Dep. at 70. Mr. Boyd stated that his left arm and wrist were swollen and severely bruised. Boyd Dep. at 78. According to Dr. Chorba, who treated Mr. Boyd at the hospital, Mr. Boyd had a sprained and swollen left wrist and swollen left elbow, and he displayed extreme anxiety. Chorba Dep. at 20. Dr. Chorba described Mr. Boyd's wrist and elbow as being "moderately swollen." Chorba Dep. at 20–21. Mr. Boyd, who stated at his deposition that he was in good health and wears no brace or other medical device, Boyd Dep. at 8, suffers no permanent physical injuries relating to his mistaken arrest. Rule 12(e) Statement ¶ 23.

### False Arrest

██ Mr. Boyd first claims that when Officers Parisi and Angarone arrested him without a warrant, they violated his Fourth and Fourteenth Amendment rights to be

free from unreasonable searches and seizures. The defendants argue, however, that their actions were proper because they had probable cause to arrest Mr. Boyd.

When police officers have probable cause to believe that a person has committed a felony, they may make a warrantless arrest in a public place. *United States v. Watson*, 423 U.S. 411, 423–24, 96 S.Ct. 820, 827–28, 46 L.Ed.2d 598, 608–09 (1976); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 440–41 (7th Cir.1986), *cert. denied* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Since Mr. Boyd's warrantless arrest took place on a public street corner, the remaining issue is whether Officers Parisi and Angarone had probable cause to believe that he had committed a felony.

Probable cause is a matter of degree, which varies with both the need for prompt action and the quality of the information that is available to police. *Gramenos v. Jewel, supra*, 797 F.2d at 438. In this case, there is no dispute that a serious crime, the sexual assault of a 12–year-old, had taken place. Thus, the need for prompt action on the part of the police is apparent. In addition, when an officer receives information from a person who he or she reasonably believes is telling the truth, the officer has probable cause. For example, the Supreme Court has upheld, in the context of a search incident to arrest, a police officer's mistaken arrest made in good faith. *Hill v. California*, 401 U.S. 797, 801–04, 91 S.Ct. 1106, 1109–11, 28 L.Ed.2d 484, 488–490 (1971). *See also Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir.), *cert. denied* 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 117 (1987) (police officer who arrests the wrong person in executing an arrest warrant does not violate the Fourth Amendment unless the officer acts unreasonably).

In this case, the Chicago police took reasonable steps to ascertain the identity of the alleged rapist. When they learned his name, his badge number, and that he worked for the CTA, the officers immediately contacted his supervisor at the CTA garage where he worked. Based on the information the police gave him, the supervisor directed the police to the plaintiff's bus route in Evanston. Finally, the plaintiff identified himself to the officers as "Boyd." At that point, Officers Angarone and Parisi had information that Jimmy Boyd, a CTA bus driver working out of the North Park garage, had been identified by a 12–year-old victim and her mother as the 12–year-old's rapist. Mr. Boyd matched all available information except for his badge number, which Officers Parisi and Angarone did not check. Mr. Boyd argues that the officers could have realized their mistake immediately had they checked his badge number. However, probable cause requires only that a police officer exercise judgment and assess probabilities in particular factual contexts. *Gramenos v. Jewel, supra*, 797 F.2d at 438–39. Based on the need for prompt action and the specificity and reliability of the information available to them, Officers Angarone and Parisi had probable cause to arrest Mr. Boyd when they stopped him at Sherman and Davis, and they were not required to further check details such as his badge number. *See Gero v. Henault*, 740 F.2d 78, 84–85 (1st Cir.1984), *cert. denied* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985) (where there is probable cause for arrest, the only question is whether it was reasonable for the arresting officers to believe that the person arrested was the one sought). Accordingly, I recommend that the defendants' motion for summary judgment be granted as to Mr. Boyd's claim that his warrantless arrest violated his Fourth and Fourteenth Amendment rights.

### Excessive Force

Mr. Boyd's complaint also alleges that Officers Parisi and Angarone used excessive force in arresting him and in transporting him to the 23rd District police headquarters. The officers contend that they are entitled to qualified immunity on Mr. Boyd's excessive force claim, and thus should be granted summary judgment. I agree.

Qualified immunity is an affirmative defense that shields government officials who perform discretionary functions from liabil-

ity for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 828, 102 S.Ct. 2727, 2743, 73 L.Ed.2d 396, 410 (1982). For a right to be "clearly established" for purposes of determining qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In other words, an official is not protected by qualified immunity where, in light of pre-existing law, the unlawfulness of his or her actions is apparent. *Id.* Whether Officers Parisi and Angarone are entitled to qualified immunity for their actions in arresting Mr. Boyd is a question of law for the court to decide, *Whitt v. Smith,* 832 F.2d 451, 453 (7th Cir.1987), although a defendant is not entitled to summary judgment on the basis of qualified immunity if there are disputed factual issues on which the question of immunity turns. *Green v. Carlson,* 826 F.2d 647, 650 (7th Cir.1987).

At the time Mr. Boyd was arrested in 1987, a Section 1983 claim based on the excessive use of force during an otherwise lawful arrest was governed by a Fourteenth Amendment substantive due process standard. *Gumz v. Morrissette,* 772 F.2d 1395, 1399–1400 (7th Cir.1985), *cert. denied* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). According to the standard set forth by the Seventh Circuit at that time, the use of force by a police officer was unconstitutional if it:

> "1) caused severe injuries, 2) was grossly disproportionate to the need for action under the circumstances, and 3) was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience."

*Id.* at 1400. Although excessive use of force claims are now governed by the Fourth Amendment "objective reasonableness standard," *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), this standard was not applicable to such claims in the Seventh Circuit until September 17, 1987, when the Seventh Circuit decided *Lester v. City of Chicago,* 830 F.2d 706 (7th Cir.1987).[2]

In this case, there is evidence that Mr. Boyd suffered a bruised and swollen left wrist, and pain in the back of his neck, Chorba Dep. at 18–20, as a result of being handcuffed with his hands behind him, and from hitting his head on either the door frame or the roof of the police car, after he was lawfully arrested. Under the standard governing excessive force cases back in effect at the time Mr. Boyd was arrested, Officers Parisi and Angarone did not violate any of Mr. Boyd's clearly established rights. First, as a matter of law, his injury, while unfortunate, was not severe. *See de La Paz v. Danzl,* 646 F.Supp. 914, 919–20 (N.D.Ill.1986) (as a matter of law, slight bruising to plaintiff's left wrist and middle back were not severe injuries). *See also Van Houten v. Baughman,* 663 F.Supp. 887, 891 (C.D.Ill.1987) (where plaintiff complained that he experienced some pain in his wrists as a result of handcuffing, and later complained of occasional numbness in one of his hands, he did not suffer severe injuries as required by *Gumz v. Morrissette, supra,* 772 F.2d 1395). Neither were the actions taken by Officers Parisi and Angarone grossly disproportionate to the need for action under the circumstances, or, based on the evidence before me, so flagrant that they shocked the conscience of the court. Thus, Officers Parisi and Angarone are entitled to qualified immunity for their actions taken following Mr. Boyd's arrest in transporting him to the police station, and I recommend that their motion for summary judgment be granted as to Mr. Boyd's excessive force claim.[3]

---

2. Mr. Boyd has the burden of demonstrating that Officers Parisi and Angarone violated a constitutional right that was clearly established on September 14, 1987. *Klein v. Ryan,* 847 F.2d 368, 371 (7th Cir.1988).

3. In Mr. Boyd's brief, he claims that his injuries were so severe that he could not work for three months. Plaintiff's Memorandum at 5. However, he has presented no evidence that he could not work for three months, and he makes no

*See Alm v. Moreth,* 694 F.Supp. 1322, 1323–24 (N.D.Ill.1988) (placing handcuffs on the plaintiff, who had recently undergone surgery on his left wrist which had not yet completely healed, and leaving them on until he arrived at the police station, while not the most compassionate course of action, was not grossly disproportionate to the need for action under the circumstances).

In his complaint, Mr. Boyd also alleges that the Chicago police officers arrested him without authority, since the arrest occurred in Evanston. Initially, Mr. Boyd's contention is incorrect, because, under Illinois law, a police officer from one municipality may arrest someone in an adjoining municipality within any county of the state in order to protect the lives, rights and property of citizens. Ill.Rev. Stat. ch. 24 ¶¶ 7–4–7 and –8. Evanston, where Mr. Boyd was arrested, adjoins Chicago and both Chicago and Evanston are located in Cook County. Moreover, because Officers Parisi and Angarone had probable cause to believe that Mr. Boyd had committed a criminal sexual assault, the arrest was for the purpose of protecting the lives and rights of citizens. Thus, Mr. Boyd's arrest in Evanston did not violate Illinois law. However, even if the arrest was not proper under Illinois law, a violation of state law does not create Section 1983 liability. *Gramenos v. Jewel, supra,* 797 F.2d at 434. Because the question of Officers Angarone and Parisi's authority to arrest Mr. Boyd involves no principle of federal law, the defendants are entitled to summary judgment as to Mr. Boyd's contention that they had no authority to arrest him in Evanston.

Mr. Boyd has not shown that there is a genuine issue of material fact as to whether the defendants had probable cause to arrest him on September 14, 1987. Accordingly, I recommend that the defendants' motion for summary judgment as to his unlawful arrest claim be granted. Further,

such allegation in his complaint. Mr. Boyd cannot rest on a bare assertion in his brief to

because the defendants' use of force in handcuffing Mr. Boyd and transporting him to the 23rd District Police Station was not excessive under the standard that was clearly established at the time of Mr. Boyd's arrest, Officers Parisi and Angarone are entitled to qualified immunity as to Mr. Boyd's excessive force claim, and I recommend that the defendants' motion for summary judgment be granted as to that claim. Finally, Mr. Boyd's allegation that the defendants had no authority to arrest him in Evanston involves a question of state, rather than constitutional law, and thus does not state a Section 1983 claim, and I recommend that the defendants' motion for summary judgment as to this claim also be granted.

/s/ Elaine E. Bucklo
ELAINE E. BUCKLO
United States Magistrate

defeat a motion for summary judgment.