In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1095

DALLAS MCINTOSH,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:17-cv-103 — **J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 29, 2020 — DECIDED FEBRUARY 5, 2021

Before ROVNER, BRENNAN, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* The Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies before challenging his conditions of confinement in federal court. As we recognized in *Pavey v. Conley*, sometimes a dispute arises over whether a prisoner satisfied this exhaustion requirement, and resolving the question requires holding a hearing, finding facts, and making credibility determinations. All of that happened here, with a magistrate judge holding a

hearing and determining that Dallas McIntosh exhausted remedies available to him within the St. Clair County Jail in southern Illinois. But the district court then rejected the magistrate judge's recommended finding, and it did so without itself holding a new hearing upon which to base its own credibility determinations. That was error in the circumstances present here, where witness credibility weighed heavily in the exhaustion-of-remedies inquiry. We remand for a hearing in the district court.

## I

### A

In early 2017 Illinois inmate Dallas McIntosh invoked 42 U.S.C. § 1983 and sued Wexford Health Sources and multiple jail officials for acting with deliberate indifference to his serious medical needs. McIntosh alleged not only that a nurse funneled him unprescribed medication under the table, but also that staff members failed to prevent him from attempting suicide after he became addicted to the painkillers and began suffering from acute mental illness. At that time, McIntosh was a pretrial detainee who had not yet been convicted of a crime, and so his claim arose not under the Eighth Amendment's prohibition of cruel and unusual punishment, but rather under the Fourteenth Amendment's Due Process Clause. See *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018).

Before entering the courthouse, though, McIntosh had to satisfy the obligation Congress put on prisoners in the Prison Litigation Reform Act to exhaust all available administrative remedies. See 42 U.S.C. § 1997e(a). As McIntosh tells it, he did so by timely filing grievances detailing the substance of his complaints with the appropriate officers in the manner

prescribed by the jail's written procedures. But the process came to an abrupt halt, McIntosh continues, when Sergeant Steve Strubberg told him that the internal administrative process was on hold pending the outcome of a criminal investigation into how he had obtained such large quantities of unprescribed pain medication.

Wexford and the jail officials present a competing narrative. By their telling, McIntosh submitted no grievances and indeed fabricated the entire exhaustion account. The defendants accordingly moved for summary judgment on the ground that McIntosh failed to exhaust administrative remedies before filing his § 1983 action in federal court.

B

Recognizing the contested exhaustion facts, the district court referred the case to a magistrate judge for a so-called *Pavey* hearing. See *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (requiring that, where exhaustion is contested, the district court hold a hearing to resolve relevant facts before proceeding to pretrial discovery). Over the course of two days, the magistrate judge heard testimony from McIntosh and Sergeant Strubberg of the St. Clair County Jail. McIntosh also supported his testimony with two affidavits from fellow inmates. As the parties emphasized to the magistrate judge, the exhaustion dispute would "come down to an issue of credibility between Mr. McIntosh and Sergeant Strubberg."

In time the magistrate judge issued a report and recommendation rejecting the defendants' invitation to "find McIntosh's version of events not credible." Indeed, the magistrate judge credited and accepted McIntosh's version of events, further finding that the affidavits from the two other inmates

corroborated and reinforced his account. Based on these find-
ings, the magistrate recommended that the district court deny
the defendants' motion for summary judgment.

The defendants objected to the magistrate judge's report.
The district court reviewed the record and transcripts but
then—without holding any hearing of its own—rejected not
just the magistrate judge's overarching finding that McIntosh
had exhausted administrative remedies, but also the specific
credibility determinations underpinning that finding. The
district court found that McIntosh's grievance paperwork re-
flected forgery and rejected the two inmate affidavits as con-
taining impermissible hearsay. Even more, the district court
underscored that it saw the parties' credibility much differ-
ently, finding it "plainly apparent that Strubberg and his story
are much more credible than McIntosh and his." Relying on
these new findings, the district court entered summary judg-
ment for the defendants.

McIntosh now appeals.

## II

The parties start from a point of agreement. They recog-
nize that the district court acted properly under the Federal
Magistrates Act in referring the contested exhaustion ques-
tion to a magistrate judge for a *Pavey* hearing. See 28 U.S.C.
§ 636(b)(1)(B) (providing that a district court may "designate
a magistrate judge to conduct hearings, including evidentiary
hearings, and to submit to a judge of the court proposed find-
ings of fact and recommendations for the disposition" of most
motions filed with the district court).

The Federal Magistrates Act then goes further and pro-
vides direction to district courts where a party raises an

objection to some portion of a magistrate judge's report and recommendation. In those circumstances, Congress tasked the district court with making "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1).

In *United States v. Raddatz* the Supreme Court held that a district court, when faced with an objection to a magistrate judge's report, need not rehear live testimony before relying on a magistrate's recommendation and credibility determinations. See 447 U.S. 667, 680–81 (1980). The Federal Magistrates Act, the Court reasoned, calls only for a "determination"—not for a hearing. *Id.* at 674. But the Court took care to limit its holding to those instances where a district judge *approves and accepts* a magistrate's credibility determinations:

> Neither the statute nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a *de novo* "determination" has doubts concerning the credibility findings of the magistrate. The issue is not before us, but we assume it is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

*Id.* at 681 n.7.

In *Raddatz*'s wake, we have "directly address[ed] the constitutional implications that were alluded to by the Court." *Jackson v. United States*, 859 F.3d 495, 499 (7th Cir. 2017). We

held in *Jackson* that a district court offends due process by "reject[ing] a magistrate judge's material credibility findings based on a witness's live testimony, without first holding a *de novo* evidentiary hearing." *Id.*

Wexford and the jail officials urge us to read *Jackson* as limited to its precise context—criminal law and post-conviction relief under 28 U.S.C. § 2255. We decline that invitation. Both habeas petitions and § 1983 actions are civil proceedings that "serve to protect basic constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). We see no reason to require a hearing in the habeas post-conviction review context without also demanding the same procedural protections in prisoner civil rights litigation under § 1983. See *id.* (noting that "the demarcation line between civil rights actions and habeas petitions is not always clear" and it "is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ").

Nor do Wexford or the jail officials point us to authority compelling their position. Though we have previously emphasized the discretion afforded district courts to review magistrate judge recommendations without conducting a new hearing, we have done so only in situations where a district court adopted the findings of a magistrate judge. See, *e.g., Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995); *United States v. Severson*, 49 F.3d 268, 273 (7th Cir. 1995). That a district court *adopting* a magistrate judge's findings is not required to hold a new hearing says little of what a judge must do before *rejecting* a magistrate judge's findings and recommendations.

A more general precept warrants underscoring. Due process, the law has long recognized, "is flexible and calls for such procedural protections as the particular situation

demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Where, as here, a district judge questions and then rejects the credibility determinations made by a magistrate judge during a *Pavey* hearing, the district court must hold a *de novo* hearing to support its own credibility determinations, absent extraordinary circumstances.

The qualifier—absent extraordinary circumstances—is important. We do not mean to chisel our observations in *Jackson* into an unyielding rule. It may be that in some rare circumstance, particular credibility findings by a magistrate judge find no plausible support in the record. But that is far from what transpired here. Our review of the record leaves us with the impression that the magistrate judge's credibility findings had ample support. The magistrate judge held a hearing, heard McIntosh's story directly from the source, and weighed McIntosh's credibility against that of Sergeant Strubberg. After the hearing, the magistrate judge credited McIntosh's account. In these circumstances, the district court was not free to reject that determination without itself hearing from the essential witnesses.

Hearings often offer what paper cannot. The court will hear directly from the witnesses and have the opportunity to assess the coherence of their accounts by evaluating their demeanor, conduct, clarity, conviction, body language, and the like—in a word, their credibility. In this way, the new hearing is not just process for the sake of process. Process matters precisely because it often enhances the quality of decision making. All of that is certainly so here, where so much turns on assessments of individual and comparative credibility.

## III

Two final observations will provide guidance on remand. *First*, the district court must be sure to draw all reasonable inferences in McIntosh's favor. We are not certain the court did so the first time around. Take, for example, the district court's response to the parties' arguments regarding the absence of administrator signatures on McIntosh's grievances. The district court reasoned that "[t]he lack of signatures only shows that both sides of the story here are plausible—but that does not mean that you immediately take the plaintiff's side as true." To the contrary, "[p]lausible inferences must be resolved in favor of the party opposing summary judgment." *Gramenos v. Jewel Co., Inc.*, 797 F.2d 432, 436 (7th Cir. 1986). This error, too, may have influenced the district court's ruling. A fresh hearing will allow the court to take a new look at the evidence and to consider it in the light most favorable to McIntosh.

*Second*, the district court should consider McIntosh's two inmate affidavits. The Federal Rules of Evidence define hearsay as an out-of-court statement "a party offers into evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c)(2). The two affidavits are not inadmissible hearsay because they were submitted not for their truth—not to prove as a matter of fact that McIntosh would have to await the conclusion of the investigation before proceeding further with the grievance process—but instead to establish what Sergeant Strubberg said and what effect his words may have had on McIntosh.

For these reasons, we VACATE the district court's judgment and REMAND for proceedings consistent with this opinion.