THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FAULTON G. DOUGLAS, Defendant-Appellant.

(No. 59911;

First District (3rd Division)—June 5, 1975.

*Rehearing denied June 26, 1975.*

Kaplan and Kaplan, of Chicago (Marshall Kaplan, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John F. Brennan, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Faulton G. Douglas, was charged by informations with the offenses of disorderly conduct and resisting arrest. After a jury trial in the circuit court of Cook County, defendant was found guilty of both charges. The court fined him $25 on the disorderly conduct conviction and $100 on the resisting arrest conviction, plus court costs. Defendant appeals, contending that the informations were legally deficient; that he was not proved guilty of the charges beyond a reasonable doubt; and that prejudicial misconduct on the part of the prosecutor denied him a fair trial.

On July 7, 1972, at approximately 8:30 P.M., defendant was arrested

by two Illinois State police officers at 118th and Halsted Streets in the City of Chicago. The arrest occurred on property owned by the defendant. The testimony adduced at trial concerning the incident was highly disputed.

Dennis Angelo, an Illinois State trooper, testified that he and his partner, William Gegenwarth, were riding on patrol in a marked squad car on the evening in question. Gegenwarth drove into an apparently abandoned service station to intercept a traffic offender spotted minutes before. After 3 or 4 minutes had passed, defendant, admittedly not the traffic offender, drove into the station and pulled adjacent to the police car. Defendant then screamed an obscenity. When defendant complied with Angelo's request to repeat his statement, both officers exited their vehicle. Defendant parked, got out, and approached the officers. According to Angelo, he sought to discover defendant's problem and to try to calm him down. Defendant continued to scream that the police had no business on his property, punctuating his remarks with profanities and refusing to produce any identification. When Officer Angelo noticed several pedestrians and customers at a frozen custard stand across the street standing and looking in their direction, he immediately informed defendant that he was under arrest for disorderly conduct. Defendant then started to walk toward the service station entrance, saying that he owned the station and that his identification was inside the office. Gegenwarth refused to permit defendant to open the door, and finally pushed defendant away. Defendant began to yell again and walk toward his vehicle. The officers followed, admonishing defendant that they would have to arrest him for resisting arrest if he did not get into the squad car. When defendant refused to heed their warning, Gegenwarth grabbed defendant's arm. When defendant pulled his arm back and appeared ready to strike Gegenwarth with his fist, Gegenwarth sprayed mace into defendant's face. Subdued, defendant was handcuffed and helped to the police car. Angelo obtained defendant's permission to get the latter's identification papers from the glove compartment of his auto. Angelo noticed that the number of people watching had grown to 8 to 10.

On cross-examination, Officer Angelo stated that at some point during the incident he also may have been screaming. He added that while the underlying reason for the initial arrest was the fact that defendant had disturbed the people nearby, he never questioned any of them and none approached him.

Officer Gegenwarth confirmed Angelo's account that they had been on defendant's property for 3 or 4 minutes awaiting the passing of a traffic offender when defendant arrived. Defendant screamed obscenities,

"threshed" his arms about, and loudly proclaimed that the police had no right to be on his property. The officer observed that people across the street and at the frozen custard stand were looking in their direction. Angelo then told defendant he was under arrest for disorderly conduct. Defendant dared the officers to try to take him and began walking to the service station building with keys in his hand, purportedly to obtain his identification. Gegenwarth stationed himself in front of the door to block defendant's entrance. The officer did not know what might be inside. After defendant was pushed away, he resumed screaming. Later in the squad car, defendant attempted to leave and Gegenwarth again sprayed mace on defendant's shirt to restrain him. Gegenwarth stated on cross-examination that at times his voice may have been as loud as defendant's. He estimated the number of people watching the incident to be 10 to 15. He did not speak to any of them or get any of their names.

Dan Oswald, testifying for defendant, stated that he was talking to another neighbor across the street during the occurrence. In his opinion, the squad car had been parked on defendant's property for 15 to 20 minutes before defendant arrived. The witness observed defendant get out of his auto, wave to the officers, converse with them after they exited the police car, and then walk toward the service station building out of his view. The next thing he saw was defendant dropping to his knees. Oswald estimated that he was standing about 100 feet from the officers and defendant and about the same distance from the frozen custard stand. He was unable to hear anything the officers or defendant said. He observed one or two customers at the frozen custard stand and did not see a crowd congregate.

George Cristoff testified for defendant that he was talking to Oswald outside their homes when this incident occurred. He estimated that the officers were on defendant's property for 15 minutes before defendant arrived. Because of his vantage point he was unable to see anything that took place at the service station. He did not hear any conversation and did not see a crowd congregate to view the incident.

Defendant testified that upon driving into his service station he parked and waved at the officers in a friendly manner. He was not annoyed at their presence because he considered it free protection. Angelo responded with a profanity. When defendant commented that he had meant no harm, Gegenwarth uttered a profanity, to which defendant responded in kind. Both officers exited the squad car, Gegenwarth with gun drawn. After Gegenwarth asked to see defendant's driver's license, defendant said that it was in the glove compartment of his car and offered to get it. Gegenwarth replied that defendant was under arrest. When that

officer later told defendant to get the license, defendant was maced as he tried to enter his car. Defendant then felt two sharp blows to his head. He was handcuffed and taken to the police station. Enroute, defendant was questioned regarding his knowledge of any sales of guns or dope in the area. Defendant's negative responses prompted continued macing in his face by Gegenwarth.

Defendant's primary arguments with regard to the disorderly conduct conviction relate to the legal sufficiency of the information charging him with that offense and to the sufficiency of the proof offered at trial to establish his guilt. We elect to reach the second issue.

■ ■ A person commits the offense of disorderly conduct when he knowingly acts in such unreasonable manner as to harm or disturb another and provoke a breach of the peace. (Ill. Rev. Stat. 1971, ch. 38, par. 26—1(a)(1).) Arguing with a police officer, even if done loudly, will not of itself constitute a violation of this section. (See *City of Chicago v. Morris* (1970), 47 Ill.2d 226, 264 N.E.2d 1; *City of Chicago v. Wender* (1970), 46 Ill.2d 20, 262 N.E.2d 470.) What is reasonable must always depend upon the facts and circumstances of the particular case. *People v. Raby* (1968), 40 Ill.2d 392, 240 N.E.2d 595, *cert. denied* (1969), 393 U.S. 1083.

The crux of defendant's reasonable doubt contention centers upon the amount of evidence offered to prove a breach of the peace. The State maintains that the existence of a crowd looking in the direction of the participants was sufficient to create a jury question on the issue. The evidence is conflicting as to whether a group of people congregated to view the incident and, if they did, as to their number and location. In any event, viewing the evidence most favorable to the State, it is clear that the proof was insufficient on this point. Both officers testified that defendant's arrest for disorderly conduct was predicated upon the fact that people in the area began looking in their direction. Most of the onlookers appeared to be approximately 100 to 200 feet away. Neither officer questioned any of them after the arrest was made.

In *City of Chicago v. Blakemore* (1973), 15 Ill.App.3d 994, 305 N.E.2d 687, this court reversed a conviction for disorderly conduct that was based upon the use of defendant's vulgar language and the fact that a crowd had gathered to watch the incident. We noted that no disturbance or disorder had occurred and that no evidence had been introduced as to the effect of defendant's conduct upon the bystanders. Accordingly, the complete lack of any evidence that a breach of the peace had occurred required reversal of the conviction.

■■ The reasoning of *Blakemore* is sound and we adopt it. Vulgar lan-

guage, however distasteful or offensive to one's sensibilities, does not evolve into a crime because people standing nearby stop, look, and listen. The State's concern becomes dominant only when a breach of the peace is provoked by the language. (See *City of Chicago v. Wender.*) Here the record shows no disorder took place. No evidence was introduced as to the effect of the language, if any, upon the onlookers. Indeed the record does not even contain any evidence permitting an inference of a disturbing effect upon the bystanders through defendant's conduct. (Compare *City of Chicago v. Morris.*) Therefore, the conviction for disorderly conduct cannot stand.

Defendant next attacks his conviction for resisting a peace officer. He initially argues that the information charging him with this crime was legally deficient.

The charge was grounded in section 31—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 31—1, amended, Ill. Rev. Stat. 1973, ch. 38, par. 31—1). That section provides it is a crime for a person to knowingly resist or obstruct the performance by one known to the person to be a peace officer of any authorized act within his official capacity. The information in this case, captioned "Resisting A Peace Officer," alleged that defendant knowingly resisted performance by two police officers, known by defendant to be police officers, by fighting and struggling with them while the officers were performing an authorized act in their capacity as police officers.

■■ According to defendant, the failure of the information to outline the authorized act the officers allegedly were performing is fatal. Defendant contends that the information is unclear as to whom the officers were arresting and, accordingly, makes it unclear as to whether defendant was being charged with obstructing or resisting a peace officer. The argument is unpersuasive. The complaint was captioned "Resisting." The body of the complaint twice stated that defendant "knowingly resisted" the police officers. A reasonable man would have no difficulty comprehending that the officers' initial efforts of apprehension were directed toward defendant and not some third person. Defendant also alleges that the failure of the complaint to outline the authorized act purportedly engaged in by the police officers failed to apprise defendant whether such act was truly authorized. Again, the argument lacks merit. Since one cannot resist an arrest he believes to be illegal (*People v. Carroll* (1971), 133 Ill.App.2d 78, 272 N.E.2d 822), the allegation that the officers' act was authorized is sufficient for purposes of determining the sufficiency of the complaint. The charge in this case was verbalized by the adoption of the statutory language as well as a description of the

acts constituting the offense. (*People v. Leach* (1972), 3 Ill.App.3d 389, 279 N.E.2d 450.) The trial court properly overruled defendant's motion in arrest of judgment.

Defendant next argues that the evidence at trial did not prove his guilt of resisting a police officer beyond a reasonable doubt.

Officers Angelo and Gegenwarth testified that they repeatedly requested defendant to get into the police car after he had been formally notified of his arrest for disorderly conduct. They further stated that when Gegenwarth finally grabbed defendant by the left arm to escort him to the police car, defendant jerked his arm away and began to swing at the officer. Gegenwarth then maced defendant to subdue him. Defendant testified that the officers maced and struck him for no reason and that he never resisted arrest. He further maintained that his conduct was justified by the officers' actions. The two witnesses testifying in defendant's behalf did not see the physical altercation.

■■■ The invalidity of an arrest for disorderly conduct does not permit the accused to physically resist the arrest. (*People v. Shinn* (1972), 5 Ill.App.3d 468, 283 N.E.2d 502.) The proper forum to vitiate the arrest is in the courts, not on the streets. (*People v. Carroll.*) The jury heard the witnesses and undertook the duty to reconcile the conflicting versions of this incident. On the cold record before us, we are not prepared to disturb the finding of the jury. *People v. Hoffman* (1970), 45 Ill.2d 221, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904.

Defendant finally contends that several questions and comments by the prosecutor constituted prejudicial and reversible error.

■■ Error is asserted through the several references in the record that defendant may have instituted a complaint against a Chicago police officer regarding an undisclosed occurrence on a prior occasion. These references are noted in the record in three places: in a nonresponsive answer by Angelo, which was not objected to by defense counsel; in the prosecutor's closing argument, also made without objection; and in the prosecutor's questioning of defendant, which was met by defense counsel's objection and which was sustained and stricken by the trial court. Such evidence was clearly irrelevant and immaterial and the prosecutor should not have indulged in it. However, the error was cured by the trial court on one occasion, and the failure of defense counsel to object on the other two occasions waives the error. Although this court will not hesitate to invoke the plain error doctrine where applicable, the present record fails to reflect that substantial prejudice inured to defendant by the introduction of this testimony.

Defendant also claims error in the prosecutor's questioning of the defendant on cross-examination regarding the latter's filing of a com-

plaint with the F.B.I. concerning the present incident. The record reveals that after the prosecutor asked defendant if he was maintaining that he had been continually maced enroute to the police station, defendant replied that he had called the F.B.I. The prosecutor immediately asked if the defendant had reported this matter to the F.B.I. Defense counsel's objection was overruled and the defendant replied in the affirmative. In reply to another question, defendant said that the F.B.I. would investigate his allegations after this case had ended. The prosecutor also referred to the filing of the complaint during closing argument without objection.

■■ The State contends that the trial court correctly ruled that the witness' reference to the F.B.I. "opened the door" to the prosecutor's follow-up questions regarding defendant's filing of a complaint with that agency. However, the doctrine of "opening the door" or curative admissibility only applies when opposing counsel has elicited through his questions irrelevant or incompetent testimony and has induced the court to enter into that collateral field. (See McCormick's Handbook of the Law of Evidence § 57, at 131-133 (2d ed. Cleary 1972); *People v. Wilbert* (1973), 15 Ill.App.3d 974, 305 N.E.2d 173.) Defense counsel's objection should have been sustained. Nevertheless, after viewing the question in context and after a careful review of the entire record, we believe that this error did not deprive defendant of a fair trial.

■■ Defendant's remaining allegation of error involving the prosecutor refers to a question to which no objection was made by the defense. This waives the issue for purpose of review.

Accordingly, the judgment of the circuit court of Cook County as to the charge of resisting a police officer is affirmed. The judgment as to the charge of disorderly conduct is reversed.

Affirmed in part; reversed in part.

McGLOON, P. J., and MEJDA, J., concur.