**William McGAUGHEY, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation; Herman Cross, Star #15497; Sgt. Charles Ramsey, Star #2219, individually and in their official capacity, Defendants.**

**No. 84 C 10546.**

United States District Court,
N.D. Illinois, E.D.

March 18, 1987.

Cecile Singer, Edward Stein and Linda Fisher, Singer & Stein, Chicago, Ill., for plaintiff.

Robert J. Dargis, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

William McGaughey filed this action for relief under 42 U.S.C. § 1983 (1982) and pendent common law torts against Sergeant Charles Ramsey and Officer Herman Cross (referred to collectively herein as "the individual defendants") and the City of Chicago ("the City"). His suit stems from his arrest for disorderly conduct on March 23, 1984, and his subsequent detention by the Chicago Police Department ("the Department") for a period of somewhere between twenty-one and twenty-three hours prior to his release. Following his acquittal on the disorderly conduct charge, McGaughey filed this suit claiming, among other things, that in arresting and detaining him the defendants deprived him of his constitutional right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments. The parties have completed discovery and filed their final pretrial order and have all moved for summary judgment on two of the five counts in the complaint. For the following reasons, McGaughey's motion for summary judgment on Count I and Count III is denied. The motion of Cross and Ramsey on Count I is denied, and the City's summary judgment motion on Count III is denied.

## I. FACTUAL BACKGROUND [1]

McGaughey, a former Chicago police officer, owned an apartment building on the south side of Chicago. On March 23, 1984, between 7:00 p.m. and 8:00 p.m., one of his tenants summoned him to the building. When McGaughey arrived, Cross, Ramsey and three other officers, were searching one of the apartments pursuant to a war-

---

1. The following facts are drawn from the stipulation of undisputed facts submitted as part of the pretrial order.

rant. McGaughey knocked on the door of this apartment and, after being recognized as a former Chicago police officer, was told to wait outside. McGaughey complied, but after a period of time, he returned to the apartment, knocked on the door and held a conversation with Cross and Ramsey. At the officers' direction, McGaughey once again went outside and awaited the completion of the search. The officers later came out of the building with an arrestee when McGaughey asked them for their names and badge numbers. Following a verbal exchange between McGaughey and Cross and Ramsey, the nature and content of which is in dispute, Ramsey ordered Cross to arrest McGaughey. McGaughey was handcuffed and transported to the Organized Crime Division office where he was handcuffed to a ring on a wall to await processing.

At Ramsey's direction, McGaughey was charged with disorderly conduct, Ill.Rev. Stat. ch. 38, ¶ 26–1(a)(1) (1985), a Class C misdemeanor. Ill.Rev.Stat. ch. 38, ¶ 26–1(b) (1985). Although state law provides that persons arrested for Class C misdemeanors may be released with a fifty dollar cash bail, Ill.Rev.Stat. ch. 110A, ¶ 528(c) (1985), the City has a policy and practice of denying misdemeanor arrestees an opportunity to be released on bail until their fingerprints are cleared through the Department's Identification Section.

Following initial processing, McGaughey was transported to a lock-up facility where he arrived at 2:40 a.m. on March 24, 1984. At 2:45 a.m., a Department employee fingerprinted McGaughey pursuant to the previously referenced City policy, and the prints were transmitted to the Identification Section. The Identification Section did not "clear" McGaughey's fingerprints until 7:00 p.m. that evening, sixteen hours and fifteen minutes after the prints were initially transmitted. McGaughey was released at 7:30 p.m., nearly seventeen hours after he was first taken to the lock-up and, depending upon which set of facts are believed, either twenty-one or twenty-three hours after his arrest. On September 6, 1984, a Cook County Circuit Court Judge

directed a finding of not guilty at McGaughey's trial for disorderly conduct.

Subsequently, McGaughey filed this § 1983 suit challenging the constitutionality of the defendants' alleged conduct as well as charging state law torts arising from the same conduct. The complaint contains five counts. Count I charges Cross and Ramsey with depriving McGaughey of his right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments. This claim is based on the constitutionality of McGaughey's arrest, which he contends was made without probable cause. Count II is a pendent state law claim against Cross and Ramsey for malicious prosecution. Count III charges the City with maintaining an unconstitutional policy of detaining misdemeanor arrestees for unreasonable periods in violation of the Fourth and Fourteenth Amendments. Counts IV, V and VI are pendent claims against all defendants for false imprisonment, false arrest and malicious prosecution, respectively. Only Counts I and III are at issue in the present motions.

## II. INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

After reviewing the papers, we conclude that the individual defendants' motion for summary judgment is on a theory of relief which McGaughey is not pursuing. Cross and Ramsey moved for summary judgment on the unconstitutional arrest claim in Count I, arguing that the law of post-arrest detention was not clearly established at the time of McGaughey's arrest, thus entitling them to qualified immunity. McGaughey responds that the individual defendants' motion really addresses his pending state law claim for unlawful detention or false imprisonment set forth in Count IV, thus requiring application of an entirely different standard. The parties' arguments make it clear that McGaughey's claim in Count I is directed solely toward his *arrest* as a constitutional violation, whereas his complaint about the first part of his post-arrest *detention* (prior to his transportation to the lock-up) is grounded in state law

as articulated in Count IV. Thus, Cross and Ramsey are moving for summary judgment on a claim that is not present in this action, and we accordingly deny their motion.

### III. McGAUGHEY'S SUMMARY JUDGMENT MOTION ON COUNT I

McGaughey has moved for summary judgment on the issue of the constitutionality of his arrest. In support of this motion, he maintains that even reading the facts in the light most favorable to the individual defendants, the Court must conclude that Cross and Ramsey arrested him without probable cause that he was in violation of the disorderly conduct statute. Furthermore, he contends that the individual defendants cannot avail themselves of the affirmative defense of qualified immunity because their conduct constituted a violation of clearly established constitutional rights. In response, Cross and Ramsey maintain that there is a genuine issue of fact concerning the probable cause issue, particularly since disorderly conduct is a crime which is largely defined by the particular factual context in which the conduct occurs. They also contend that the law regarding arrests for disorderly conduct was not clearly established at the time they arrested McGaughey so they are entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ In order for McGaughey to prevail on his summary judgment motion, he must demonstrate that there are no genuine issues of material fact such that he is entitled to judgment as a matter of law on his unconstitutional arrest claim. Fed.R.Civ.P. 56(c). He bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A complicating factor in the present case is the individual defendants' assertion of the affirmative defense of

qualified immunity, on which they did not seek summary judgment. Thus, McGaughey must show not only that he is entitled to judgment as a matter of law on his substantive claim, but also he must show as a matter of law that the defendants cannot meet their burden of proof on the qualified immunity defense.[2]

#### A. *Probable Cause*

■ We first address the question of whether McGaughey is entitled to summary judgment on his affirmative constitutional claim. In evaluating McGaughey's motion, the Court must read the facts in the light most favorable to Cross and Ramsey. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 460 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). If McGaughey can demonstrate that no reasonable jury could find for Cross and Ramsey even under this liberal standard, he is entitled to judgment as a matter of law. Although the basic incidents which occurred on the night of McGaughey's arrest are undisputed, the parties' respective versions of the nature and character of their encounter differ greatly.

According to the individual defendants, they encountered McGaughey on three separate occasions during the course of their search of his apartment building. Neither side disputes that McGaughey twice entered the building and went to the apartment being searched. The defendants claim, however, that on the first entry McGaughey appeared agitated and concerned about possible damage being done to the apartment by the police. Deposition of Charles Ramsey ("Ramsey Dep.") at 12, 14–15. Deposition testimony indicates that McGaughey directed profanities at the individual defendants, including phrases such as "You motherfuckers messed up my door" and "You motherfuckers ain't got no right to do this to me." Ramsey Dep. at 12, 15. Ramsey and another officer talked with McGaughey in the hallway for about

---

**2.** It is clear that a § 1983 defendant bears the burden of proof on the qualified immunity defense. *Kompare v. Stein,* 801 F.2d 883, 886 (7th Cir.1986); *see also* S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 8.16 (2d ed. 1986).

ten minutes, showed him a copy of the search warrant and told him to leave. Ramsey Dep. at 13–15. McGaughey complied but returned five minutes later, Ramsey Dep. at 16, this time pushing the door open while Cross was leaning against the other side. Deposition of Herman Cross ("Cross Dep.") at 21–22. At this time, McGaughey apparently tried to yell to the apartment's occupants about their individual rights. Ramsey Dep. at 18; Cross Dep. at 22. After again being told by Cross and Ramsey to leave, McGaughey responded with more profanities, repeatedly directing the term "motherfuckers" at the officers. Ramsey Dep. at 19–20. Once again, however, McGaughey left as requested.

A period of time of undetermined length passed as the officers completed their search, which resulted in the arrest of one of the apartment's occupants, Anthony Marshall. Cross Dep. at 24. The officers left the building with a handcuffed Marshall in tow, leaving behind the other occupants of the apartment. Id. at 25. McGaughey was outside waiting for the officers and "blocking" a sidewalk leading to the street. Ramsey Dep. at 24. McGaughey requested the names and star numbers of all the officers, and Ramsey promised him that he would supply that information but that McGaughey would have to let them pass. Id. at 25, 28. Cross told McGaughey to get out of the way, and McGaughey was warned that he would be arrested if he did not move. Id. at 28–29. McGaughey responded with more obscenities, directed mainly at Cross. Id.; Cross Dep. at 29. This entire encounter took approximately five minutes, Ramsey Dep. at 27, and during its course a total of about ten to twenty people came outside from McGaughey's building and/or a building across the street to observe what was transpiring. Cross Dep. at 29; Facchini Dep. at 13.[3]

Ramsey ordered Cross to arrest McGaughey for disorderly conduct under the state criminal code. Cross filed an arrest complaint which stated that McGaughey acted in an unreasonable manner so as to disturb another and to provoke a breach of peace by being "loud and abusive" toward a reporting officer and causing the reporting officer's safety to be placed in jeopardy. Ramsey Dep. at 41–42. Ramsey testified that the "unreasonable manner" referred to McGaughey's use of profanity and that "it looked like he had thoughts of maybe perhaps even becoming physically violent at the time." Id. at 41. He also testified that the officers' safety was placed in jeopardy because "had the people in the street become agitated at our actions, which is not very uncommon in the area of 59th and Union, we do have sort of a problem." Id. at 42.

McGaughey's account represents that his behavior on the night of the arrest was much more docile. He contends that he was not acting in a loud and abusive manner, but argues that even if he acted in the manner which the defendants allege there was not probable cause to arrest him for disorderly conduct under Ill.Rev.Stat. ch. 38, ¶ 26–1(a)(1) (1985). He points out that while the individual defendants say he was blocking their way, other officers present at the time have testified that they brought Anthony Marshall to the squadrol while the exchange on the sidewalk was taking place. Guerrirri Dep. at 12; Bailey Dep. at 22–23; Facchini Dep. at 13–14. Furthermore, McGaughey contends there is evidence that the people gathering around to watch the incident were attracted by the arrival of the squadrol and not by McGaughey's conduct, Brady Dep. at 26, and that none of the observers were doing anything but standing, looking and "making noise." Bailey Dep. at 30; Cross Dep. at 30.

Reading these facts in the light most favorable to the individual defendants, we must assume that McGaughey was indeed conducting himself in a loud and abusive manner which included the liberal use of profanities. Furthermore, we must assume for the limited purpose of this motion

**3.** Except for Cross and Ramsey, the first names of the other deposed witnesses (Facchini, Guerrirri, Bailey, Brady) whose testimony has been submitted in conjunction with this motion have not been provided to the Court. Accordingly, we refer to their testimony with their last names and the page numbers of the relevant deposition transcript.

that the people gathering around the street numbered somewhere between ten and twenty, *see* Facchini Dep. at 13 (representing largest estimate by an officer), and that they came outside as a result of the exchange between McGaughey and Cross and Ramsey. Measured against the interpretations of the state disorderly conduct statute by Illinois courts, McGaughey's purported behavior might have been sufficient to give the individual defendants probable cause to arrest him. Accordingly, we must deny his motion for summary judgment.

■ The disorderly conduct provision relevant here states that "[a] person commits disorderly conduct when he knowingly: (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." Ill.Rev.Stat. ch. 38, ¶ 26–1(a)(1) (1985). Thus, the elements of the crime are phrased in the conjunctive and a violation occurs only where the defendant's conduct is (1) unreasonable and (2) alarms or disturbs another *and* (3) provokes a breach of the peace. *People v. Trester*, 96 Ill.App.3d 553, 555, 52 Ill.Dec. 96, 97, 421 N.E.2d 959, 960 (4th Dist.1981).

It is clear now and was clear in 1984 that under Illinois law merely arguing with a police officer, even if done loudly, will not of itself constitute a violation of ¶ 26–1(a)(1). *People v. Douglas*, 29 Ill.App.3d 738, 742, 331 N.E.2d 359, 363 (1st Dist. 1975). Furthermore, "[v]ulgar language, however distasteful or offensive to one's sensibilities does not evolve into a crime because people standing nearby stop, look, and listen." *Id.* at 742–43, 331 N.E.2d at 363. Nevertheless, the reasonableness of a person's behavior is necessarily tied to the facts and circumstances of the situation in which he or she is placed. *Id.* at 742, 331 N.E.2d at 363.

The main dispute here is whether McGaughey acted in such a manner as "to provoke a breach of the peace." In *Douglas*, which has many similarities to the present case, an Illinois appellate court reversed a disorderly conduct conviction under ¶ 26–1(a)(1) where there was no evidence that any disorder took place. In that case, the state did not introduce any evidence respecting the effect of the defendant's language on the onlookers, and the record was devoid of any evidence even permitting an inference of a disturbing effect on the bystanders. *Id.* at 743, 331 N.E.2d at 363. Accordingly, the court found that the state had not proved the defendant's guilt beyond a reasonable doubt. *Id.* Nevertheless, an officer on the job need not have proof beyond a reasonable doubt in order to make an arrest. Moreover, another Illinois appellate court has held that under most circumstances ¶ 26–1(a)(1) does not require that a "breach of the peace" actually occur as a result of the defendant's conduct, so long as a clear relationship between the alleged conduct and the public order is shown. *People v. Ellis*, 141 Ill.App.3d 632, 633, 96 Ill.Dec. 247, 248, 491 N.E.2d 61, 62 (5th Dist.1986); *People v. Slaton*, 24 Ill.App.3d 1062, 1063, 322 N.E.2d 553, 554 (5th Dist.1974).

As summarized above, in the present case the facts concerning the size and nature of the "crowd" gathering at the time of McGaughey's confrontation with Cross and Ramsey are disputed. Reading those facts in the light most favorable to the individual defendants, we conclude that a reasonable jury could conceivably find that Cross and Ramsey had probable cause to believe that McGaughey had provoked a breach of the peace. We note, however, that the facts of this case are very close to those in *Douglas*, and that the evidence presented by the individual defendants regarding probable cause, while sufficient to survive summary judgment, is minimal.[4]

---

4. We also observe an important factual dispute regarding the length of time between McGaughey's two entries into the building and the confrontation on the sidewalk. The individual defendants say they began executing the search warrant at 8:15 p.m. and took two and half hours to complete the search. Ramsey Dep. at 35, 69. Accordingly, it is not clear that McGaughey's behavior on his first two entries would be close enough in time to his arrest to be considered in the probable cause determination. Furthermore, there is no evidence in the record regarding any breach of the peace which might have arisen from McGaughey's behavior *inside* the apartment building.

## B. *Individual Defendants' Entitlement to Qualified Immunity*

Although we have already determined that McGaughey cannot prevail on summary judgment, we must address the affirmative defense of qualified immunity pled by Cross and Ramsey with respect to Count I. Because the standard for invoking a valid qualified immunity defense in a wrongful arrest case is intertwined with the question of probable cause, we hold that Cross and Ramsey are not entitled to a qualified immunity defense.

■ The standard for qualified immunity for executive branch public officials in their performance of discretionary acts is an objective one as set forth by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).[5] These officials are entitled to immunity from damages suits for constitutional torts unless their conduct was in violation of clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. The official's subjective intent is completely irrelevant to the immunity question, even though it may be an essential element of the underlying constitutional violation alleged. *Wade v. Hegner*, 804 F.2d 67, 69–70 (7th Cir.1986). Furthermore, the Supreme Court recently held that in applying *Harlow* to wrongful arrest cases, the defendant should be protected by qualified immunity unless "a reasonably well-trained officer in … [his or her] position would have known that" there was not probable cause. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). In that case, which involved a police officer's reliance on an arrest warrant issued by a magistrate, the Court found that if officers of reasonable competence could disagree on the issue of whether a warrant would issue, immunity should be recognized by the lower court. *Id.* at ——, 106 S.Ct. at 1096. Thus, we do not hold police officers to the same stan-

dard we would apply to a law professor walking the beat.

In establishing the *Harlow* test, the Supreme Court envisioned a system where qualified immunity could be raised and disposed of as a preliminary matter. Under this formulation, trial courts resolve the qualified immunity question on summary judgment, usually at an early stage of the litigation and stay discovery pending a determination of the availability of the defense. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The Seventh Circuit has also directed district courts to resolve immunity questions before trial. *See, e.g., Bailey v. Andrews*, 811 F.2d 366, 370 (7th Cir.1987); *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985). The present case, however, has not developed consistently with this model. The individual defendants did not move for summary judgment on the issue of qualified immunity, although they properly pled it as an affirmative defense in their answer. Furthermore, this summary judgment motion, brought by McGaughey rather than the defendants, was not filed until discovery had been completed and the pretrial order submitted.

■ Notwithstanding the unorthodox manner in which the qualified immunity issue reaches us, we deem it necessary to address our concerns. It appears that the *Harlow* qualified immunity standard works better in theory than in practice, at least with respect to claims of an arrest without probable cause, because it often will be impossible to assess the objective reasonableness of the defendant's conduct without a resolution of the factual disputes surrounding the incident from which the action arises. Where the substantive constitutional violation alleged is an "unreasonable seizure" under the Fourth and Fourteenth Amendments, the question of the officer's reasonableness is necessarily part of the calculus of whether such a right was violated. Thus, in wrongful arrest cases, the *Harlow* inquiry regarding the objective reasonableness of the defendant's

---

**5.** Although *Harlow* involved a suit against federal officials directly under the Constitution as authorized by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court noted that identical standards of immunity would apply to state officials sued under § 1983. *Harlow*, 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30.

conduct collapses into the probable cause analysis, which should ordinarily be left to the jury. *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 438 (7th Cir.1986), *petition for cert. filed,* 55 U.S.L.W. 3537 (U.S. Feb. 10, 1987) (No. 86–884).

■ At a certain level of generality, it can certainly be said that it was clearly established law at the time this case arose that no citizen may be arrested without probable cause. *See Moore v. The Marketplace Restaurant,* 754 F.2d 1336, 1358 (7th Cir.1985) (Posner, J., concurring). Beyond that, however, we are left to a resolution of the "purely legal matter" of qualified immunity without a clear understanding of the facts underlying the arrest. Since, as discussed above, there are genuine issues of material fact regarding probable cause, this Court concludes that the qualified immunity defense is unworkable in the present case, and we accordingly rule that Cross and Ramsey cannot assert the defense here. If at trial they have demonstrated that their behavior was objectively reasonable, they will have defeated McGaughey's substantive constitutional claim.

Our holding is supported by recent decisions in this Circuit. In *Moore v. The Marketplace Restaurant,* 754 F.2d 1336 (7th Cir.1985), Judge Posner stated in his concurring opinion:

> [W]hat was perfectly clear when these arrests were made, as now, is that an arrest is not proper without probable cause. So if there was no probable

cause, there was no immunity; if there was probable cause, then, as just pointed out, there was immunity. *The issue of immunity will thus be resolved automatically by the jury's resolution of the issue of probable cause; but the jury should not be asked to decide immunity.*

*Id.* at 1358 (Posner, J., concurring) (emphasis added);[6] *accord, Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 192–93 (3d Cir.1984); *see also Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985).[7] Implicit in this statement is the notion that it is difficult, or perhaps impossible, to separate the question of whether an officer had probable cause to arrest an individual from the question of whether the officer acted in a manner which was objectively reasonable under clearly established constitutional law.

The Supreme Court's *Malley* decision fails to resolve the anomalous procedure the district court is supposed to follow in dealing with pretrial resolution of qualified immunity in a wrongful arrest case. The determination of whether reasonably competent officers could disagree whether there was probable cause to arrest McGaughey is hopelessly fact-bound. Thus, even after *Malley* it appears that the qualified immunity analysis in a wrongful arrest case necessitates a resolution of factual disputes fundamental to the plaintiff's affirmative case.[8]

---

**6.** Although Judge Coffey's opinion for the court disagreed with this proposition, *Moore,* 754 F.2d at 1347–48, Judge Posner's concurrence on this particular issue was joined by Judge Gibson, thus constituting a majority of the panel. *Id.,* 754 F.2d at 1361 (Gibson, S.J., concurring).

**7.** In *Llaguno,* the Seventh Circuit noted the quandary which the trial court must deal with in separating the qualified immunity defense from the issue of the underlying violation, as it observed:

> The good sense of *Harlow* in withdrawing the issue of immunity from the jury is particularly evident in a case such as this, where the police are charged with having acted without probable cause. The question whether they had probable cause depends on what they reasonably believed with reference to the facts that confronted them, as the judge in-

structed in the passage we quoted earlier [regarding the existence of probable cause as an element of the constitutional violation]. To go on and instruct the jury further that even if the police acted without probable cause they should be exonerated if they reasonably (though erroneously) believed that they were acting reasonably is to confuse the jury and give the defendants two bites at the apple. 763 F.2d at 1569.

**8.** The Seventh Circuit has applied *Malley* in a few recent cases, but has not extensively analyzed this interplay between qualified immunity and probable cause. *See, e.g., Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987); *Reardon v. Wroan,* 811 F.2d 1025 (7th Cir.1987); *BeVier v. Hucal,* 806 F.2d 123, 128–29 (7th Cir.1986).

# 1140

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNT III

Totally aside from the disputed existence of probable cause at the time of the arrest is the question of the reasonableness of the extended detention which followed. McGaughey moves for summary judgment on Count III, in which he contends that his Fourth and Fourteenth Amendment rights[9] were violated as a direct result of the City's fingerprint detention policy. The City responds that there are genuine issues of material fact concerning the proximate cause of the length of McGaughey's detention, arguing that a large proportion of the delay in processing McGaughey's fingerprints may have been attributable to the negligence of a department employee rather than the policy itself. Furthermore, the City contends that whether the policy was responsible just for the approximately sixteen hours following the taking of McGaughey's fingerprints or for the entire period of his detention is a disputed question of fact for the jury to resolve. The City also moves for summary judgment on Count III, arguing that even if the entire detention period was caused by its policy, that period was of a reasonable duration. For the following reasons, we deny both motions.

Certain issues regarding McGaughey's detention are not disputed, including the length of his detention from the time he was brought to the lock-up and fingerprinted at 2:40 a.m. on March 24, 1984, to the time of his release at 7:30 p.m. that evening (sixteen hours and fifty minutes). Furthermore, the City does not dispute that it has a policy, set forth as General Order 78–1, which authorizes the detention of misdemeanor arrestees until their fingerprints are "cleared" by the Identification Section of the Department. Details about the actual form of transmission and review of the fingerprint records are also undisputed.

The disputed fact issues with respect to Count III concern the various justifications offered by the City for its policy as well as statistics submitted by McGaughey regarding the average length of detentions, allegedly drawn from an audit of the fingerprint policy by members of the Department. Furthermore, there is a dispute over the length of time McGaughey was detained between his arrest and his transfer to the lock-up where he was fingerprinted. While the actual form of transmission and review of the fingerprint records are also undisputed.

The disputed fact issues with respect to Count III concern the various justifications offered by the City for its policy as well as statistics submitted by McGaughey regarding the average length of detentions, allegedly drawn from an audit of the fingerprint policy by members of the Department. Furthermore, there is a dispute over the length of time McGaughey was detained between his arrest and his transfer to the lock-up where he was fingerprinted. While the arrest report states the time of arrest as 8:15 p.m., the City argues that there is evidence that the time was erroneously recorded and that the original search of the apartment began around 8:15 p.m. but took approximately two and one half hours to complete. Ramsey Dep. at 35, 69. Thus, under McGaughey's version, he was detained for approximately six and one half hours even before his arrival at the lock-up, and according to the City's version, the period was closer to four hours.

Courts addressing the constitutionality of the post-arrest detention of a suspect prior to the opportunity to appear before a magistrate for an independent determination of probable cause have discussed the protected rights under the rubric of the Fourth Amendment as applied to the states through the Fourteenth Amendment.[10]

---

9. Although in the separately drafted paragraphs of Count III, McGaughey only mentions the Fourteenth Amendment, he incorporates earlier portions of the complaint seeking relief under the Fourth Amendment. Amended Complaint, ¶ 34.

10. Detentions following an arrest where a "first appearance" before a magistrate has been provided or for which a warrant was originally *issued* are examined under the procedural due process component of the Fourteenth Amendment. *Rodgers v. Lincoln Towing Service, Inc.,*

*Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432 (7th Cir.1986), *petition for cert. filed,* 55 U.S. L.W. 3537 (U.S. Feb. 10, 1987) (No. 86–884); *Doulin v. City of Chicago,* 662 F.Supp. 318 (1986) (Rovner, J.).

The starting point for any discussion of the constitutionality of post-arrest detention is the decision in *Gerstein,* where the Supreme Court held that "the Fourth Amendment requires a *judicial* determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein,* 420 U.S. at 114, 95 S.Ct. at 863 (emphasis added). The Court crafted this requirement to address its concern with the possibility of extensive detentions based solely on a law enforcement official's unreviewed determination of probable cause to make the initial arrest. Even if an arrest is legitimately predicated on probable cause, if no warrant was obtained the arrestee is entitled to a prompt affirmation of probable cause by a neutral, detached judicial officer. *Id.* at 125, 95 S.Ct. at 868–69. The arresting officer's determination of probable cause justifies only the arrest itself and "a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113–14, 95 S.Ct. at 863. Upon completion of these administrative steps, the suspect must be either brought before a magistrate for a probable cause hearing or released. *Gramenos,* 797 F.2d at 437.

Not unlike the probable cause evaluation, judicial review of the "brief period of detention" under the Fourth Amendment is often tied to the particular circumstances underlying the detention. The Supreme Court has never elaborated on Gerstein with a bright-line rule defining the outer limits of a constitutionally permissible "brief period." The American Law Institute has recommended a two hour maximum for such detentions absent special circumstances. *Model Code of Pre-Arraignment Procedure* § 130.2(1) (1975). While acknowledging the somewhat arbitrary nature of a specific time limit on post-arrest detentions, the Comments to the Model Code suggest that this is necessary because "police and prosecutors should be explicitly informed what they are, and are not, authorized to do, rather than being forced to await a court interpretation of what constitutes 'unnecessary' or 'undue' delay on a case-by-case basis." Commentary, *Id.* On the other hand, courts have recognized that the character of the constitutional right involved must be measured not by a fixed time but by the particular circumstances of the detention. *Bernard v. City of Palo Alto,* 699 F.2d 1023, 1025 (9th Cir.1983). In *Bernard,* the court upheld a district court injunction requiring county law enforcement officials to provide a probable cause determination within 24 hours of a warrantless arrest. As the court aptly observed, however:

> The time fixed was not meant to define the constitutional right. Detention for less than 24 hours without a probable cause hearing would violate the Constitution in a particular case if the circumstances were such that the administrative steps leading to a magistrate's determination reasonably could have been completed in less than 24 hours.

*Id.*

The Seventh Circuit has twice decided that a four hour post-arrest detention without an appearance before a magistrate requires "an explanation" from the government. *Gramenos,* 797 F.2d at 437; *Moore v. The Marketplace Restaurant,* 754 F.2d 1336, 1350–52 (7th Cir.1985). Factual findings regarding the reasons for prolonging a suspect's detention for an extensive period are helpful in evaluating the reasonableness of that period. As the Seventh Circuit noted in *Gramenos:*

> It is premature to say how long is too long under the fourth amendment. On remand the police should explain what must be done after an arrest for shoplifting and why reasonably diligent officers need more than four hours to do it. The court also should determine whether four hours is an acceptable period for a non-violent misdemeanor. If the police

771 F.2d 194 (7th Cir.1985); *Coleman v. Frantz,*

754 F.2d 719 (7th Cir.1985).

choose to perform time-consuming tasks after an arrest, perhaps they must do so on their own time rather than the suspect's, issuing a citation rather than keeping the suspect locked up in the interim.

797 F.2d at 437.

Furthermore, the City's reliance on *Fisher v. Washington Metropolitan Area Transportation Authority*, 690 F.2d 1133 (4th Cir.1982), is misplaced. *Fisher* is distinguishable from the present case because, while the plaintiff there was initially taken into custody by a transit police officer and brought into a county police station for booking without an arrest warrant, a warrant was obtained from a magistrate shortly after the plaintiff arrived. *Id.* at 1136. Thus, the extent of the "post-arrest, pre-probable cause hearing detention" in *Fisher* was extremely limited and did not include the fifteen-hour period of detention at the county facility which the City here incorrectly argues was declared to be "reasonable." *Id.* at 1141.

■ Recently in *Doulin v. City of Chicago*, 662 F.Supp. 318 (1986) (Rovner, J.), the court declared the City's policy of detaining misdemeanor arrestees for the purpose of clearing their fingerprints to be unconstitutional and enjoined further enforcement and execution of this policy.[11] After scrutinizing an extensive factual record regarding the purposes and effects of the City's policy as measured against the Fourth Amendment's standard of reasonableness articulated in *Gerstein* and other cases, the *Doulin* court found that the City lacked substantial justification to detain misdemeanor arrestees who had no reasonable probability of having the charges against them elevated to a felony. *Id.* at 328, 330–31.

■ On the surface, there appear to be serious constitutional problems with the City's fingerprint detention policy as applied to McGaughey as well. Even under the City's version of the facts, McGaughey was detained for nearly seventeen hours from early in the morning until the next evening while the City purported to process his fingerprints. It is difficult to see how under any construction this detention can be squared with the Supreme Court's admonition that the arrestee be provided a fair and reliable determination of probable cause by a judicial officer "before or *promptly after* arrest." *Gerstein*, 420 U.S. at 125, 95 S.Ct. 868–69 (emphasis added) (footnote omitted). When he was finally released at 7:30 p.m. on March 24, 1984, McGaughey had spent a total of at least twenty-one hours in the custody of the Chicago Police Department without being provided an opportunity to post bond for his release or to appear before a magistrate for a probable cause hearing. Furthermore, according to the undisputed stipulation of facts, McGaughey was recognized by the officers on the night of his arrest as a former Chicago police officer. One factor in determining the reasonableness of detaining a misdemeanor arrestee is whether there is reasonable cause to suspect that his or her prior criminal history might elevate the present misdemeanor charge to a felony. *Doulin v. City of Chicago*, 662 F.Supp. at 327–28 (1986) (Rovner, J.).

The City's policy as applied to McGaughey and other misdemeanor arrestees who are unlikely to have a criminal record establishes a rather perverse system of priorities. Because the policy entails detention until the suspect's fingerprints are either cleared or matched with prints already on file, a suspect with a clean record is likely to be detained for a much longer period than a repeat offender, as employees of the City's Identification Section search in vain for a set of matching prints.

■ Nonetheless, at this stage we do not have the benefit of extensive factual findings regarding the City's justifications for its policy as did the court in *Doulin*. Although there are certain undisputed facts regarding the detention, such as the length of time it took for McGaughey's fingerprints to be cleared, there are disputes regarding the reasons for the delay

---

11. *Doulin* was certified as a class action for purposes of injunctive relief only. As a result, McGaughey's request for damages does not fit within the scope of the class relief ordered by Judge Rovner, and his claim cannot be resolved by joining that class.

in processing. As noted above, the City argues that the negligence of one of its employees occasioned the extensive delay between taking McGaughey's fingerprints and receiving clearance. We observe, however, that if such delay is commonplace and is a direct outgrowth of the City's policy, the fact that it is a product of incompetence rather than design may have no bearing on the reasonableness of the detention. At this point, we deny McGaughey's motion for summary judgment on the Fourth Amendment claim in Count III. However, because there are strong indications in the record that his detention was grossly in excess of the time it should have taken to complete the administrative steps incident to McGaughey's arrest, we will entertain a directed verdict motion by McGaughey at trial if the City cannot clearly demonstrate legitimate reasons for McGaughey's lengthy incarceration.

Because, as we have stated above, the detention of McGaughey for up to twenty-three hours (reading the facts in the light most favorable to him) is facially unreasonable absent a legitimate and clearly articulated reason for the delay, we also deny the City's motion for summary judgment on Count III.

## V. CONCLUSION

For the foregoing reasons, we deny McGaughey's motion for summary judgment on Counts I and III, and we also deny the City's motion for summary judgment on Count III. Furthermore, Cross and Ramsey's motion for summary judgment on Count I is denied. This cause is referred to Magistrate James T. Balog to conduct a settlement conference with the parties. A representative of the City with authority to settle and the plaintiff should be present at this conference, along with the respective attorneys. Magistrate Balog is also to rule on any motions in limine and objections to instructions or to exhibits. The Magistrate is to report to the Court on or before July 1, 1987. It is so ordered.